IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY L. LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-208-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Danny L. Long requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 6, 1963, and was forty-nine years old at the time of the administrative hearing (Tr. 29, 115). He completed high school and earned a CDL, and has worked as a tree trimmer (Tr. 21, 155). The claimant alleges that he has been unable to work since November 15, 2009, due to bipolar disorder, schizophrenia, and suicidal ideation (Tr. 155).

## Procedural History

On October 12, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 16, 2012 (Tr. 11-23). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), but that he needed to avoid work above shoulder level. Additionally, the ALJ imposed the following limitations related to his

mental impairments: limited to simple, repetitive tasks; able to relate to peers and supervisors on a superficial work basis; and not able to relate to the general public (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economy he could perform, *i. e.*, janitor and warehouse worker (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly account for the mental functional limitations imposed by state reviewing physicians, and (ii) by finding that he had the RFC to perform medium work (even with the additional restrictions). The Court finds that the ALJ failed to conduct a proper step four analysis, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of shoulder pain and depression (Tr. 13). Medical evidence related to the claimant's physical impairment reveals that he complained of shoulder pain for quite some time. An x-ray of the left shoulder on March 7, 2008 revealed that the osseous and joint structures were intact and without evidence of fractures, dislocations, or significant degenerative changes (Tr. 322). On February 10, 2010, an x-ray of the claimant's right shoulder following a report that it "slipped out" of socket revealed minimal glenohumeral degenerative joint disease (Tr. 320). A bilateral shoulder MRI the following month, on March 11, 2010, gave the impression for the right shoulder, of irregularity along the medial aspect of the glenoid with an adjacent bony density, disruption of the labrum in this region, tendinopathy and

likely partial tearing of the superior aspect of the supraspinatus tendon within its mid substance, and proximal biceps tendon not identified. As to the left shoulder, there was bone marrow edema within the inferior aspect of the glenoid with diffuse thinning of the labrum, proximal biceps tendon not well visualized, supraspinatus tendinopathy, and small focal area of fluid demonstrated in the region of the superior glenohumeral and middle glenohumeral ligaments (Tr. 355-356). The claimant was scheduled for surgery on his left shoulder, but ultimately did not have it. Although the lab work does not appear to be contained in the record, the claimant reported during a counseling session that he did not undergo surgery because he tested positive for methamphetamines (Tr. 379). The record contained no consultative examiner report or state agency reviewing physician physical RFC assessment, although it contained two mental RFC assessments.

At the administrative hearing, the claimant testified that he had been "clean" for almost two years (Tr. 32). As to his shoulders, he stated that they were "busted" and needed surgery but he mentioned that there was a possibility of developing arthritis and that he had elected to not have surgery (Tr. 34). He said the problem was that his shoulders regularly fall out of socket rendering him unable to pick up a bucket of water (Tr. 34). He described the pain as constant, and that he has experienced it for a number of years but that it has gradually worsened (Tr. 34).

Step four of the sequential analysis is comprised of three distinct phases. The ALJ must first establish the claimant's RFC, then determine the demands of the claimant's past work (both physical and mental), and ultimately conclude whether the claimant's RFC enables him to meet those demands. *See, e. g., Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996) [citations omitted]. At each phase, the ALJ must make specific factual findings, *id.*, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work," *id.* at 1025. *See Henrie v. U.S. Department of Health and Human Services*, 13 F.3d 359, 361 (10th Cir. 1993) ("We recognize the tension created when the mandate of [Soc. Sec. Rul. 82-62] is transposed on claimant's step four burden of proof. In this regard, we emphasize that it is not the ALJ's duty to be the claimant's advocate. Rather, the duty is one of inquiry and factual development.") [citation omitted], *citing* Soc. Sec. Rul. 82-62, 1982 WL 31386 (1983). Here, the claimant challenges the ALJ's findings at the first phase of the step-four analysis, *i. e.*, the claimant asserts there is no substantial evidence to support a finding that he can perform medium work.

The ALJ found that the claimant had the RFC to perform medium work, with the physical limitation of avoiding work above shoulder level[2] (Tr. 15). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he

---

[2] The ALJ also imposed a number of restrictions related to the claimant's mental impairment, and the claimant challenges these findings as well. On remand, the ALJ should re-evaluate *all* the claimant's impairments in determining his RFC.

-6-

has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Here, the record contains evidence that the claimant had a severe shoulder impairment. Although the record contains evidence of the times the claimant went to the hospital to have his shoulder put back into place, the x-rays and MRIs, and the recommendation for the claimant's surgery, there are no physical RFC assessments in the record—from a treating physician, a consultative physician, or a state reviewing physician. Instead, the ALJ made his own determination as follows: "Because of the claimant's shoulder pain, the undersigned limits the claimant to medium work, but finds the claimant needs to avoid work above shoulder level" (Tr. 17-18). He then noted that no physician found the claimant disabled, and gave great weight to the state reviewing physician opinions as supporting his RFC and the medical evidence (Tr. 20). Notably, the state physician opinions only related to the claimant's mental impairments (Tr. 357-374, 508-525).

The ALJ did not cite to any evidence in the record indicating that the claimant could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, and he thus failed to point to medical evidence demonstrating the claimant can perform medium work. The claimant's testimony belies such a finding, as he stated that he has difficulty lifting a bucket of water, and there is no evidence in the record supporting a

finding of medium work. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at \*7. As in *Jagodzinski*, "[t]he problem in this case is the absence of evidence regarding plaintiff's impairments and limitations[.]" 2013 WL 4849101, at \*5. "When the medical evidence indicates . . . that the record is insufficient to make an RFC finding, it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform medium work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Id*. *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted].

The Commissioner asserts that the ALJ is not required to draw a direct line between an RFC finding and a medical opinion. S*ee Chapo v. Astrue*, 682 F.3d 1285, (10th Cir. 2012) ("We have thus rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."). But here, the ALJ failed "to cite to any evidence in support of his RFC finding that plaintiff can perform medium work." *Jagodzinski*, 2013 WL 4849101, at \*5 n.4 ("By contrast, in *Chapo*, the record included two physical RFC assessments.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC. On remand, the ALJ should consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The ALJ could also request that a state agency physician review the record. An ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id.* at 1166. But an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 1168. Such an examination would have been helpful in this case, because in its absence the ALJ had no opinions as to the claimant's physical RFC. The ALJ's discretion is not boundless, and under the

circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**